IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Clean Waste Systems, LLC, | Civil No. |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| WasteMedX, LLC and Timothy J. Miller, | |
| Defendants. | |

[¶1]    Plaintiff, Clean Waste Systems, LLC ("CWS"), for its complaint against defendant WasteMedX, LLC ("WasteMedX") and defendant Timothy J. Miller ("Miller") (collectively herein "defendants"), states and alleges as follows:

## THE PARTIES

[¶2]    CWS is a North Dakota domestic limited liability company with its principal place of business in Fargo, North Dakota, engaged in the manufacturing and sale of ozone based medical waste treatment systems.

[¶3]    WasteMedX is an Indiana limited liability company with its principal place of business in Carmel, Indiana.

[¶4]    Miller is a resident of the State of Indiana with an address of 3660 Walden Place, Carmel, Indiana 46033.

## JURISDICTION AND VENUE

[¶5]    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the plaintiff and the defendants, the amount in controversy exceeds $75,000 (exclusive of attorneys' fees and costs), and an actual and justiciable controversy exists between the parties.

[¶6]    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 18 U.S.C. § 1836(c).

[¶7]    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because WasteMedX and Miller are subject to personal jurisdiction in North Dakota, and/or a substantial part of the acts and omissions giving rise to these claims occurred in North Dakota.

## GENERAL ALLEGATIONS

[¶8]    CWS manufactures and sells ozone based medical waste treatment systems to customers worldwide.

[¶9]    On February 24, 2014, O'Day Medical, LLC, ("O'Day") and OZ Solutions, LLC, ("OZ Solution"), as the exclusive distributor for CWS, entered into a Master Independent Sales Representative Agreement, (the "ISR Agreement") a copy of which is attached hereto as **Exhibit A**.

[¶10]   On October 14, 2014, the ISR Agreement was amended by the parties to the ISR Agreement by amending the commissions and sales exhibit, a copy of which is attached hereto as **Exhibit B**.

[¶11]   On or about March 1, 2018, the ISR Agreement was again amended by the parties to the ISR Agreement by substituting WasteMedX for O'Day and CWS for OZ Solutions, and further amending the territory, commissions, and sales exhibits, a copy of which is attached hereto as **Exhibit C**.

[¶12]   Miller was at all times a principal in O'Day, and later in WasteMedX, and was the contact for such companies in all dealings with OZ Solutions and CWS.

[¶13]   Section 6.5 of the ISR Agreement provides as follows:

Except as required in the course of performing services for OZ SOLUTIONS hereunder, ***ISR will not use or disclose to any third party any CWS confidential or proprietary information or CWS intellectual property without the prior written approval of CWS.*** Without limiting the generality of the foregoing, CWS confidential or proprietary information or intellectual property includes all machinery, apparatus, designs, techniques, processes, ideas, proposals, specifications, computer programs, operating instructions, source documents and data, data bases, maps, computer screens, graphic displays, and any other feature of the CWS ozone medical waste treatment apparatus, related technology, specific project or other proprietary system or product of CWS, corporate information, mailing lists, tax records, data concerning pricing, marketing, and purchasing. For purposes of this Agreement, CWS confidential or proprietary information or intellectual property includes both information disclosed to ISR by CWS and information developed by ISR in the course of its work for CWS. To the extent ISR participates in any meetings with CWS related to the project, any information disclosed during such meetings shall be considered confidential, whether such information is disclosed by CWS or a third party. ISR will limit access to CWS confidential or proprietary information to only those employees of ISR who require such information in order to perform services for CWS and will advise its employees of the restrictions upon disclosure and use set forth herein. This restriction does not apply to information that a) is or becomes available to the general public through no fault of ISR; b) was in ISR's possession, as evidenced by written records, before being disclosed to it by CWS; or c) is disclosed to ISR without obligation of confidence by a third party that has no obligations to CWS with respect to the information. ISR shall not acquire any rights to or under any good will, trademark, trade name, patent, copyright, or other property of CWS.

Section 14.3 of the ISR Agreement provides as follows:

Except to the extent governed by the United States Trademark Act (Lanham Act 15 U.S.C. §~1501, et. seq.), this Agreement shall be governed by the laws of the State of North Dakota. CWS and ISR agree that any suit brought by either of them or to which they are a party pursuant to this Agreement shall be venued in the state or federal courts of North Dakota. ISR irrevocably submits to the jurisdiction of such courts and

waive any objection either may have to the personal jurisdiction or venue of such courts and agree that any suit shall be immediately transferred to such courts. It is the parties' intent that all disputes between the parties concerning this Agreement or arising out of this Agreement be adjudicated in such courts. In any claim or dispute related to or arising out of or related to this Agreement, in addition to any other damages or remedy available under the law or in equity, a court may award the prevailing party attorney's fees, costs and related expenses incurred by the prevailing party.

[¶14]   In approximately late summer or early fall of 2018, WasteMedX and Miller, as the independent sales representative for CWS began communications and negotiations with IU Bloomington ("IU") for the potential sale of a CWS OMW1000 system from CWS to IU.

[¶15]   As part of the negotiations with IU, CWS personnel had extended discussions with IU's architect and IU's hospital personnel regarding design of the system into IU's layout and special requirements.

[¶16]   As a result of the negotiations with IU, defendants notified CWS that IU was close to signing for the CWS OMW1000 system, and that defendants expected it would close sometime in late 2019, or early 2020.

[¶17]   On January 29, 2020, WasteMedX sent to CWS a letter notifying CWS that it was terminating the ISR Agreement effective July 29, 2020 ("Termination Letter").  A copy of the Termination Letter is attached hereto as **Exhibit D**.

[¶18]   From and after January 29, 2020, through July 29, 2020, defendants failed to provide the duties required of them as set forth in the ISR Agreement and did not advance the discussion with IU.

[¶19]   In the Termination Letter the defendants indicated as follows:

Finally, in accordance with Section 13.2 of the Agreement, once termination of the Agreement is effective, WasteMedX shall immediately cease representing itself as having any

4

connection with CWS and shall immediately return to CWS any "consigned equipment, demonstrator equipment, catalogues, brochures, price lists, promotional and technical material, training material, etc." that WasteMedX has in its possession.

[¶20]   Despite the assurance as set forth in the Termination Letter, to date the defendants have not returned any of the material identified in Section 13.2 of the ISR Agreement or the Termination Letter.  On information and belief, agents of defendants still represent themselves as having a connection with CWS.

[¶21]   Prior to July 29, 2020, CWS was contacted by a CWS vendor who indicated that defendant Miller had contacted them and made inquiries about medical waste treatment using ozone.

[¶22]   In December of 2020, CWS was contacted by an engineer who indicated that defendants were building their own ozone medical waste system and that it was being sold and/or otherwise contracted to IU.  Based on information and belief, this system was designed utilizing CWS confidential information and trade secrets and was being designed prior to July 29, 2020.

## COUNT I
## BREACH OF CONTRACT

[¶23]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶24]   The ISR Agreement is a valid contract which prohibits defendants from utilizing any confidential information, proprietary information, or intellectual property of CWS.

[¶25]   Defendants have breached the ISR Agreement by utilizing CWS's confidential information, proprietary information, or intellectual property for their own use in violation of Section 6.5 of the ISR Agreement.

[¶26]   Defendants have breached the ISR Agreement by failing to perform their duties in violation of Sections 6.2 and 6.3 of the ISR Agreement.

[¶27]   Defendants have breached the ISR Agreement by failing to return any of the material identified in Section 13.2 of the ISR Agreement.

[¶28]   Defendants have breached the ISR Agreement by failing to insure that its agents have stopped represent themselves as having a connection with CWS in violation of Section 13.2 of the ISR Agreement.

## COUNT TWO
## UNLAWFUL INTERFERENCE WITH BUSINESS EXPECTANCIES

[¶29]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶30]   Defendants' unlawful conduct is an intentional and willful interference with CWS' contractual and business relationships and expectancies with its customers, vendors, and company suppliers.   Defendants intentionally interfered with CWS' customers and potential customers by inducing or otherwise causing them to refrain from or discontinue their business relationships with CWS, of which defendants were aware.

[¶31]   Defendants' interference proximately caused damage to CWS in an amount to be determined at trial.

## COUNT THREE
## MISAPPROPRIATION OF TRADE SECRETS
## N.D. CENT. CODE CH. 47-25.1

[¶32]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶33]   Some or all of the confidential and proprietary information unlawfully and wrongfully misappropriated, stolen and converted by defendants to their own use constitutes "trade

secrets" for purposes of N.D. Cent. Code Ch. 47-25.1, et seq.  Such information includes, but is not limited to, customer and potential customer information, vendor information, pricing information, contracts, marketing strategies, information related to the ozone system, sequencing, and unique software design.

[¶34]   Said information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts by CWS that are reasonable under the circumstances to maintain its secrecy by, among other things, requiring third parties to sign nondisclosure agreements and other restrictive agreements such as Section 6.5 of the ISR Agreement.

[¶35]   This Court should immediately enjoin defendants' ongoing misappropriation and direct the return of CWS' trade secret information.

[¶36]   CWS is entitled to relief for defendants' misappropriation, including compensation for the actual loss caused by the misappropriation and the unjust enrichment caused by said misappropriation, royalties, together with interest and costs as allowed by law.

[¶37]   Defendants' misappropriation was in bad faith, willful and malicious, entitling CWS to the right to amend its Complaint to include a claim for exemplary damages, and reasonable attorneys' fees.

## COUNT FOUR
## MISAPPROPRIATION OF TRADE SECRETS
## 18 U.S.C. §1836, ET SEQ.

[¶38]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶39]   Some or all of the confidential and proprietary information unlawfully and wrongfully misappropriated, stolen and converted by defendants to their own use constitutes "trade secrets" for purposes of 18 U.S.C. §1836, et seq.  Such information includes, but is not limited to, customer and potential customer information, vendor information, pricing information, contracts, marketing strategies, information related to the ozone system, sequencing, and unique software design.

[¶40]   Said information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts by CWS that are reasonable under the circumstances to maintain its secrecy by, among other things, requiring third parties to sign nondisclosure agreements and other restrictive agreements such as Section 6.5 of the ISR Agreement.

[¶41]    Said information relates to a product to be used in interstate commerce as CWS markets its products nationally and internationally and defendants were representing CWS in various states.

[¶42]   This Court should immediately enjoin defendants' ongoing misappropriation and direct the return of CWS's trade secret information.

[¶43]   CWS is entitled to relief for defendants' misappropriation, including compensation for the actual loss caused by the misappropriation and the unjust enrichment caused by said misappropriation, royalties, together with interest and costs as allowed by law.

[¶44]   Defendants' misappropriation was in bad faith, willful and malicious, entitling CWS to the right to amend its Complaint to include a claim for exemplary damages, and reasonable attorneys' fees.

## COUNT FIVE
## UNFAIR COMPETITION

[¶45]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶46]   The actions of defendants in utilizing CWS's confidential, proprietary and trade secret information constitutes competition in violation of CWS' rights under the common law of the state of North Dakota.

[¶47]   Upon information and belief, the foregoing actions of defendants were committed willfully, knowingly, maliciously and in conscious disregard of CWS' rights.

[¶48]   The foregoing actions of defendants have caused immediate and irreparable injury to CWS's business.

[¶49]   CWS is entitled to relief for defendants' unfair competition, including an accounting for and a constructive trust over, followed by the return of all property and profits wrongfully obtained by defendants from said unfair competition, damages, and interest and costs as allowed by law.

## COUNT SIX
## CONVERSION

[¶50]   CWS repeats and realleges each and every allegation set forth in the foregoing paragraphs, as fully set forth herein.

[¶51]   By utilizing CWS's confidential information, proprietary information, or intellectual property for their own use, defendants have tortiously detained CWS' property, and/or wrongfully exercised dominion or control over said property inconsistent with or in defiance of the rights of CWS.

[¶52]   CWS is entitled to the return of its converted property, together with those damages provided for in N.D. Cent. Code Section 32-03-23, the right to amend its Complaint to assert a prayer for exemplary damages, interest, and its costs.

## **PRAYER FOR RELIEF**

[¶53]   **WHEREFORE,** CWS respectfully requests of this Court Judgment be entered in favor of CWS and against defendants on all counts as follows:

A.   A judgment declaring that defendants have breached their contract with CWS;

B.   A judgement declaring that defendants have unlawfully interfered with CWS's business expectations;

C.   A judgment declaring that defendants have misappropriated CWS's trade secrets;

D.   A judgement that defendants have engaged in unfair competition;

E.   A judgement rewarding CWS damages resulting from defendants' actions;

F.   A judgment for an accounting of and constructive trust encompassing all profits illegally or improperly obtained by defendants as a result of their actions;

G.   A judgment for the right of CWS to amend its Complaint to assert a prayer for exemplary damages;

H.   A judgment against defendants awarding CWS its reasonable attorneys fees as allowed by contract and law;

I.   A judgment requiring defendants to pay CWS costs and expenses;

J.   A judgment for pre-judgment interest as allowed by law, and post-judgment interest at the legal rate;

K.  A judgment for immediate injunctive relief restraining, preliminarily and permanently enjoining defendants from any actual or threatened misappropriation of CWS trade secrets;

L.  A judgment for such other and further relief as the Court may deem just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY OF THE MAXIMUM NUMBER OF JURORS ALLOWED BY LAW ON ALL ISSUES SO TRIABLE AND OBJECTS TO THE RETURN OF A LESS THAN UNANIMOUS VERDICT**

Dated this 23rd day of February, 2021.

*/s/ Michael T. Andrews*
Michael T. Andrews (ND #05516)
David J. Hauff (ND #04145)
Anderson, Bottrell, Sanden & Thompson
4132 30th Avenue SW, Suite 100
P.O. Box 10247
Fargo, ND  58106-0247
(701) 235-3300
mandrews@andersonbottrell.com
dhauff@andersonbottrell.com
Attorneys for Plaintiff

F:/6388/37/p/complaint and jury demand