IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Clean Waste Systems, LLC, | ) |
| | ) |
| Plaintiff, | ) **ORDER ON DEFENDANT'S MOTION** |
| | ) **TO DISMISS** |
| vs. | ) |
| | ) Case No. 3:21-cv-36 |
| WasteMedX, LLC and Timothy J. Miller, | ) |
| | ) |
| Defendants. | ) |

Before the Court is Defendant Timothy J. Miller's ("Miller") motion to dismiss for failure to state a claim and for lack of personal jurisdiction. Doc. No. 11. Plaintiff Clean Waste Systems, LLC ("CWS") responded in opposition to the motion on May 28, 2021. Doc. No. 19. Miller filed a reply on June 11, 2021. Doc. No. 23. For the reasons below, the motion is granted in part and denied in part.

I.  **BACKGROUND**

This case arises from a Master Independent Sales Representative Agreement (the "ISR Agreement") pertaining to ozone-based medical waste treatment systems. See Doc. No. 1-2. As alleged by CWS, Defendant WasteMedX, LLC ("WasteMedX") and Miller (WasteMedX and Miller together, the "Defendats") breached the ISR Agreement by misusing confidential information and dodging obligations in the months leading up to the ISR Agreement's termination. Further, CWS accuses the Defendants of interference with business expectancies, trade secret misappropriation, unfair competition, and conversion.

A.  **Introduction of Parties**

CWS is a North Dakota limited liability company principally located in Fargo that designs, manufactures, and services ozone-based medical waste treatment systems. Doc. No. 21, ¶ 2. WasteMedX is an Indiana limited liability company principally based in Carmel, Indiana that sells

equipment to the medical industry. Doc. No. 12-1, ¶ 19. Miller is a citizen of Indiana and a member and employee of WasteMedX. Id. ¶¶ 2, 5.

### B.     Factual Background

The business relationship that resulted in this lawsuit formed more than 30 years ago. Doc. No. 20, ¶ 3. In the late 1980s, Miller began selling medical equipment to Imaging Solutions, Inc., a North Dakota corporation primarily operated by Michael Hofer, who is also CWS's majority owner. Id. ¶¶ 1, 3. For a time, Miller signed on as a contract employee to sell medical equipment for Imaging Solutions. Id. ¶ 6. Miller and Hofer also partnered on an unrelated business venture centered around three North Dakota limited liability companies. Id. ¶ 5.

Hofer eventually introduced Miller to CWS's medical waste treatment systems. Id. ¶ 7. Intrigued by what he heard, Miller expressed interest in starting a company to sell CWS's products. Id. CWS representatives agreed. Doc. No. 21, ¶ 8. Miller formed O'Day Medical, LLC ("O'Day") on February 24, 2014. Doc. No. 21-2.

The ISR Agreement was executed the next day. Doc. No. 1-2. The complaint alleges Miller participated in the negotiations. Doc. No. 12-1, ¶ 24. The opening paragraph of the ISR Agreement stated: "This agreement is . . . between OZ Solutions, LLC, as the exclusive distributor of [CWS] . . ., and O'Day Medical, LLC." Doc. No. 1-2, p. 1. The succeeding paragraph stated that "O'Day Medical/Timothy J Miller and Thomas L Miller ('ISR') wishes to serve as an Independent Sales Representative for sales of CWS Products and Parts in a territory to be defined by OZ SOLUTIONS." Id. The ISR Agreement imposed obligations and conferred commission-based compensation upon "ISR," which is uniformly referred to in the singular and termed an independent contractor. See id. at 1-5. The signature page designated the parties as O'Day and

2

OZ Solutions. Id. at 9. For O'Day's part, the ISR Agreement was executed "By: Timothy J. Miller Its: Partner." Id.

In addition, the ISR Agreement prohibited the unauthorized use or disclosure of CWS's confidential or propriety information. Id. at 3. It allowed for termination by either party with, as relevant here, 180 days written notice. Id. at 5. Upon termination, the ISR Agreement called for cessation of representing a connection with CWS and OZ Solutions, as well as for the return of all equipment and marketing materials. Id. at 6. A combined forum selection and consent to jurisdiction clause chose North Dakota courts for the adjudication of disputes "related to or arising out of" the ISR Agreement. Id. at 7.

Two written amendments and addendums occurred over the ensuing four years. On October 14, 2014, the parties agreed to adjust the commissions and sales expectations. Doc. No. 1-3. The amendment's signature block names O'Day and OZ Solutions as the parties. Id. at 2. O'Day's half was again signed "By: Timothy J. Miller Its: Partner." Id. At some point following the amendment, O'Day assigned its rights and obligations under the ISR Agreement to WasteMedX; OZ Solutions did likewise to CWS. See Doc. No. 1, ¶ 11.

On March 1, 2018, the parties consented to an addendum "by and between OZ Solutions, LLC, (as now assigned to Clean Waste Systems, LLC), and O'Day Medical, LLC ('ISR') (as now assigned to WasteMedX, LLC)." Doc. No. 1-4, p. 1 (some abbreviations omitted). The addendum granted exclusivity to sell CWS's products to hospitals within a defined region. Id. Miller's name never appeared in the addendum. See id. at 1-6. The addendum's signature block remained unsigned but identified CWS and WasteMedX as the parties. Id. at 2. The blank signature lines adhered to the same "By: Its:" format used in the ISR Agreement's previous versions. Id.

3

Throughout the duration of the ISR Agreement, Miller served as the primary contact for O'Day and WasteMedX, routinely engaging in communications with OZ Solutions and CWS. Doc. Nos. 1, ¶ 12; 12-1, ¶ 29. Over the course of six years, Miller traveled to North Dakota four times on O'Day or WasteMedX's behalf for business with OZ Solutions or CWS. Doc. No. 12-1, ¶¶ 30-31. Miller collaborated with CWS on pricing models, marketing information, and sales strategies. Doc. No. 21, ¶ 12. CWS also provided Miller with drawings for new product models, testing information, and various operations and installation manuals. Id. ¶ 13.

Around late summer or early fall of 2018, WasteMedX and Miller commenced negotiations with Indiana University Bloomington ("IU") regarding the potential sale of a CWS treatment system. Doc. No. 1, ¶ 14. CWS representatives had extended discussions with IU's architect and hospital personnel about designing the system to meet special requirements. Id. ¶ 15. The Defendants soon noticed CWS that IU likely intended to purchase the treatment system, with an expected closing date in late 2019 or early 2020. Id. ¶ 16.

However, as negotiations progressed, the parties' relationship deteriorated over alleged missed sales goals, unpaid commissions, and other tension points. See Doc. No. 21, ¶¶ 19-20. On January 29, 2020, WasteMedX tendered a letter to CWS with notice of intent to terminate the ISR Agreement effective July 29, 2020. Doc. No. 1-5. The termination letter acknowledged the ISR Agreement's requirement for WasteMedX to cease representing itself as having a connection with CWS and to return specified materials in its possession. Id. at 2. Miller signed the letter as WasteMedX's owner and partner. Id.

After presenting the termination letter, the Defendants allegedly failed to further advance negotiations with IU. Doc. No. 1, ¶ 18. Then in May or June 2020, CWS learned through one of its vendors that Miller had inquired about using ozone to treat medical waste. Id. ¶ 21. An engineer

4

later informed CWS that he worked with Miller to design and produce an ozone-based medical waste treatment system.  Id. ¶ 22.  The engineer relayed that the Defendants had sold or leased the new system to IU.  Id.  CWS alleges that the Defendants' system exploited confidential information and trade secrets.  Id.  In addition, CWS claims that despite the termination letter, the Defendants continue to represent themselves as affiliated with CWS and have yet to return any promised materials.  Id. ¶ 20.

    **C.**    **Procedural History**

CWS commenced the instant action on February 24, 2021.  See Doc. No. 1.  The complaint pleads six claims against both WasteMedX and Miller: (1) breach of contract; (2) unlawful interference with business expectancies; (3) misappropriation of trade secrets, in violation of North Dakota Century Code § 47-25.1, et seq.; (4) misappropriation of trade secrets, in violation of 18 U.S.C. § 1836, et seq.; (5) unfair competition; and (6) conversion.  Id.  WasteMedX responded with an answer and counterclaim on April 15, 2021.  Doc. No. 10.  The next week, Miller separately moved to dismiss the complaint against him.  Doc. No. 11.

**II.**    **DISCUSSION**

Miller maintains that the complaint fails to state a claim against him individually because only WasteMedX is bound by the ISR Agreement.  In his view, each claim is grounded on actions he undertook as a member and employee of WasteMedX, hence precluding individual liability.  Alternatively, Miller asserts a lack of personal jurisdiction due to his limited contacts with North Dakota.  The Court addresses the personal jurisdiction question before turning to the merits.  See Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 372 (8th Cir. 1990) ("Before a district court can reach the merits of a dispute and enter legally binding orders, it must determine as a threshold matter whether it possesses personal jurisdiction over the defendants.").

A.     **Personal Jurisdiction**

When confronted with a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that personal jurisdiction exists." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591 (8th Cir. 2011) (citing Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)).  This showing is tested "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (citation omitted).  The plaintiff "carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003).  Absent a hearing or trial, the evidence must be viewed in the light most favorable to the plaintiff.  Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015) (citing Radaszewski ex rel. Radaszewski v. Telecom Corp., 981 F.2d 305, 309-10 (8th Cir. 1992); Fed. R. Civ. P. 56(a)).

A federal district court exercises personal jurisdiction to the same extent as "a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); see also Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citing Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994)).  The North Dakota long-arm statute authorizes "courts to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223.  When a state's "long-arm statute is coextensive with constitutional limits, [a district court] need only determine whether the assertion of jurisdiction . . . offends due process." Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006) (citing Minnesota Mining & Mfg. v. Nippon Carbide Indus., 63 F.3d 694, 696-97 (8th Cir. 1995)).

CWS contends that Miller consented to personal jurisdiction in North Dakota due to the forum selection provision in the ISR Agreement.[1]  Because personal jurisdiction is waivable, "there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)).  Among them, "[d]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause."  Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citations omitted).  No one challenges the validity of the forum selection clause here.  So question becomes whether Miller is a party to the ISR Agreement in his individual capacity.

An agent who contracts on behalf of a disclosed principal "is not a party to the contract unless the agent and third party agree otherwise."  Restatement (Third) of Agency § 6.01(2) (Am. L. Inst. 2006).  "[C]lear and explicit evidence" must indicate that the agent intended to "add its personal liability . . . to that of the principal."  12 Richard A. Lord, Williston on Contracts § 35:36 (4th ed. 2021).  If possible, a district court discerns the intent of parties to a written contract from the writing alone.  In re Estate of Moore, 2018 ND 221, ¶ 8, 918 N.W.2d 69 (citations omitted).

In this instance, a careful reading illustrates that Miller is not a party to the ISR Agreement.  The introductory paragraph from the original ISR Agreement exclusively defined the parties as O'Day and OZ Solutions.  The agreement referred to "ISR" in the singular throughout, seeming to

---

[1] Contrary to CWS's suggestion, WasteMedX's answer and counterclaim did not waive Miller's personal jurisdiction defense.  Miller distinctly moved to dismiss the complaint against him for lack of personal jurisdiction with his initial responsive pleading.  See Fed. R. Civ. P. 12(h)(1).  CWS offers nothing to establish that the Court should treat WasteMedX and Miller interchangeably.  See Coughlin Constr. Co., Inc. v. Nu-Tec Indus., Inc., 2008 ND 163, ¶¶ 20-21, 755 N.W.2d 867 (summarizing standard for piercing the corporate veil).

7

exclude the possibility that multiple entities or individuals assumed that role. Moreover, Miller sufficiently delineated his representative capacity by signing under O'Day's signature block as its partner. Cf. Ristvedt v. Nettum, 311 N.W.2d 574, 577 (N.D. 1981) (finding personal liability where contract executed without indication that defendant signed on behalf of corporation).

Additionally, the ISR Agreement's intent is not rendered ambiguous by the recital in the second paragraph that "O'Day Medical, LLC/Timothy J Miller and Thomas L Miller ('ISR') wishes to serve as an Independent Sales Representative." Doc. No. 1-2, p. 1. Whether the "ISR" abbreviation embraced both O'Day and Miller turns on the connotation of the slash-mark, which might conceivably mean either "and" or "per." Slash, Merriam-Webster, https://www.merriam-webster.com/dictionary/slash (last visited Aug. 11, 2021). In context, however, only one alternative fits. See N.D. Cent. Code § 9-07-06 (directing that a contract must be interpreted as a whole). Had the parties really intended for Miller to personally assume the ISR's obligations, why opt for a potentially disjunctive slash-mark (as they did just once in the entire ISR Agreement) rather than a conjunctive serial comma (as they repeatedly did elsewhere) or simply the word "and" (as they did immediately after Miller's name in the same sentence)? Perhaps more acutely, the remainder of the clause presents the ISR as a singular entity that "wishes to serve as an Independent Sales Representative," not plural entities that "wish to serve as Independent Sales Representatives." Construing the slash-mark to mean "per" avoids inconsistencies and corresponds with the limited distinction of the parties in the opening paragraph. Reading the ISR Agreement as a whole, the recital clause merely designates Miller as O'Day's agent. See Restatement (Third) of Agency § 6.01 cmt. d(1) ("If a contract names both the principal and the agent, in the absence of a manifestation to the contrary the agent is not a party to the contract if the contract indicates that the agent is named only as agent.").

Subsequent amendments reinforce that conclusion. See N.D. Cent. Code § 9-07-07 ("Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together."). Neither the October 2014 amendment nor the March 2018 addendum so much as mention Miller. Instead, both modifications refer to the ISR in the singular and contemplate the parties as O'Day, OZ Solutions, and their successor entities. In sum, the ISR Agreement unambiguously bound O'Day and WasteMedX alone. Miller therefore did not expressly consent to personal jurisdiction in North Dakota.

That said, Miller is subject to personal jurisdiction as a closely related party.[2] The closely related party doctrine affords personal jurisdiction over a third party connected to disputes arising from a contract with a valid forum selection clause. Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 757 (8th Cir. 2001); see also All Energy Corp. v. Energetix, LLC, 985 F. Supp. 2d 974, 990 (S.D. Iowa 2012) (explaining underlying rationale for closely related party doctrine). The key inquiry is whether the third party is so closely related to the disputes "that it becomes foreseeable that it will be bound." Id. (quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)). Factors to consider include the third party's ownership of the contracting party, the third party's involvement in negotiations, the relationship and common interest between the third party and the contracting party, and the third party's benefit from the contract. See Carlyle Inv.

---

[2] Even if Miller were not a closely related party, the Court would conclude that his suit-related contacts with North Dakota suffice to establish specific jurisdiction over him. See Henry L. Firm v. Cuker Interactive, LLC, 950 F.3d 528, 533 (8th Cir. 2020) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781 n.13 (1984)) (explaining that a defendant may be subject to personal jurisdiction individually based on contacts made in official capacity); Travel Leaders Leisure Grp., LLC v. Cruise & Travel Experts, Inc., Case No. 19-cv-02871 (SRN/ECW), 2020 WL 4604534, at *9-11 (D. Minn. Aug. 11, 2020) (determining that specific jurisdiction existed over individual defendant under analogous facts); Custom Conveyor Corp. v. Hyde, 237 F. Supp. 3d 895, 898-901 (D. Minn. 2017) (same).

Mgmt. LLC v. Moonmouth Co. SA, 779 F.3d 214, 219 (3d Cir. 2015); Medtronic, Inc. v. Endologix, Inc., 530 F. Supp. 2d 1054, 1056-57 (D. Minn. 2008).

In application, Miller's role in the ISR Agreement's formation and performance makes his summons to a North Dakota court pursuant to the forum selection clause foreseeable. See Miljas v. Greg Cohen Promotions, LLC, --- F. Supp. 3d ----, Case No. 4:20-cv-00320-SMR-CFB, 2021 WL 2627457, at *3-5 (S.D. Iowa Apr. 30, 2021) (exercising personal jurisdiction over individual defendant under similar circumstances). Miller served as the sole member of O'Day and now holds a controlling stake in WasteMedX. He repeatedly referred to himself as a partner in both businesses. Importantly, Miller participated in negotiations and signed the ISR Agreement on O'Day's behalf. He also performed O'Day and WasteMedX's obligations under the ISR Agreement for more than six years. Finally, Miller personally benefited from the ISR Agreement through compensation derived from the commissions his businesses earned. As a result, Miller is a closely related party amenable to personal jurisdiction in North Dakota, and Miller's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied.

### B. Plausibility of Claims

Having resolved the jurisdictional question, the Court turns next to Miller's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal if a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

10

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678). Courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

While obligated to accept a complaint's factual allegations as true, courts are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." In re SuperValu, Inc., 925 F.3d 955, 962 (8th Cir. 2019) (citation omitted).

As discussed above, the Court has determined that Miller is not a party to the ISR Agreement. Accordingly, the breach of contract claim against him warrants dismissal, and the Court grants Miller's motion to dismiss as to the breach of contract claim. See Lire, Inc. v. Bob's Pizza Inn Rests., Inc., 541 N.W.2d 432, 434 (N.D. 1995) (citing N.D. Cent. Code § 9-01-02) ("To create an enforceable contract, there must be a mutual intent to create a legal obligation.").

However, the Court reaches a different result on the remaining tort claims against Miller. Miller's lone argument for dismissal is that acts undertaken in his official capacity as an employee of WasteMedX cannot expose him to personal liability. The Court disagrees.

11

An agent acting as such remains "responsible to third persons as a principal . . . [w]hen that person's acts are wrongful in their nature." N.D. Cent. Code § 3-04-02(3). As summarized by the North Dakota Supreme Court:

> It is well settled that a corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility.

Wills v. Schroeder Aviation, Inc., 390 N.W.2d 544, 547 (N.D. 1986). Wrongful acts encompass intentional torts and negligence alike. See Ceartin v. Ochs, 516 N.W.2d 651, 655 n.3 (1994); Adams v. Canterra Petroleum, Inc., 439 N.W.2d 540, 546 (N.D. 1989).

Here, the complaint sufficiently alleges that Miller personally committed the torts of interference with business expectancies, trade secret misappropriation, unfair competition, and conversion. All qualify as wrongful acts. Dismissal at the pleadings stage is thus inappropriate, and the Court denies Miller's motion to dismiss for failure as to the remaining tort claims against him.

### III.   CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Miller's motion to dismiss for failure to state a claim and for lack of personal jurisdiction (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART**. The breach of contract claim against Miller is hereby **DISMISSED WITH PREJUDICE**. All other claims

remain pending. If necessary, the Court will determine any award of attorney's fees at the conclusion of this matter.

**IT IS SO ORDERED**.

Dated this 17th day of September, 2021.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court